OPINION
{¶ 1} Appellant Gerald Lee Knight appeals his convictions for Driving Under the Influence of Alcohol in violation of Canton City Ordinance Section 331.01 and one count of Driving Under Suspension in violation of Canton City Ordinance Section 335.072. The appellee is the City of Canton.
 {¶ 2} On March 19, 2005 Sergeant John Dittmore of the Canton City Police Department was on patrol in uniform and in a marked City of Canton police car working a DUI Task Force assignment. Sergeant Dittmore observed appellant's vehicle traveling at a high rate of speed in the 500 block of Route 62 eastbound in the City of Canton, Ohio. Sergeant Dittmore clocked appellant's vehicle with the use of a laser gun and determined that the vehicle was traveling 73 M.P.H. in a 55 M.P.H. zone.
 {¶ 3} Sergeant Dittmore initiated a traffic stop for speed just east of Market Avenue. Appellant did not immediately stop. He began weaving in and out different lanes of traffic. Appellant eventually stopped at the city limits and pulled into a driveway.
 {¶ 4} Sergeant Dittmore made contact with the appellant who did not have a driver's license. Appellant's license was under a suspension. The officer noted a strong odor of alcoholic beverage coming from the appellant and very glassy red eyes. There was an open container of beer on the driver's floor board. The officer was aware that the appellant was 19 years old.
 {¶ 5} Appellant was placed in the cruiser where he was going to be cited for driving under suspension, and Sergeant Dittmore noticed an even stronger odor of alcohol at that time. Sergeant Dittmore asked the appellant if he had been drinking and the appellant responded that he had had one or two beers and had been at the Curve Nightclub. Appellant further volunteered that he had been stopped before for underage drinking but let go. The appellant told Sergeant Dittmore that "he had gotten him this time." Sergeant Dittmore described the appellant as excited and argumentative while he was in the back of the cruiser. Because of appellant's demeanor Sergeant Dittmore did not perform a field sobriety test on him. Because the City of Canton's breath testing machine was inoperable, appellant was taken to the hospital where he voluntarily submitted to a blood alcohol test.
 {¶ 6} On April 21, 2005 appellant filed a motion to suppress the results of appellant's blood sample. The trial court conducted an evidentiary hearing on May 18, 2005. By judgment entry filed May 24, 2005, the trial court overruled appellant's motion to suppress and found that there was sufficient probable cause to arrest appellant for operating his vehicle under the influence of alcohol.
 {¶ 7} Appellant subsequently entered a plea of no-contest on May 25, 2005 to one count of driving under suspension and one count of operating a vehicle under the influence of alcohol. The trial court ordered appellant to pay a fine of $550 plus court costs and further ordered appellant to serve 180 days in the Stark County Jail. The trial court suspended all but 72 hours on the condition of appellant's good behavior for two years. Appellant was further ordered to complete the driver's intervention program and perform 50 hours of community service. The trial court further ordered appellant to complete a ten page essay on substance abuse and on appellant's goals in life. Finally the trial court suspended appellant's driver's license for 180 days.
 {¶ 8} On May 27, 2005 appellant filed a notice of appeal and herein raises the following assignment of error:
 {¶ 9} "I. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS."
 I. {¶ 10} In his sole assignment of error, appellant argues that the trial court erred in denying his motion to suppress and in finding that Sergeant Dittmore had probable cause to arrest appellant. We disagree.
 {¶ 11} There are three methods of challenging on appeal a trial courts ruling on a motion to suppress. First, an appellant may challenge the trial courts findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141, State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams
(1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial courts findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial courts conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93, 96, 641 N.E.2d 1172, State v. Claytor (1993),85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v.Guysinger (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. In this case, Appellant is contending that the trial court incorrectly decided the ultimate issue.
 {¶ 12} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility.Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778.
 {¶ 13} Appellant argues that there were no other indicia of alcohol impairment to support probable cause for the arrest. Appellant further argues that the common indicia of intoxication, i.e. bloodshot eyes, slurred speech, and/or an odor of alcoholic beverage, are insufficient by themselves to demonstrate probable cause for an OMVI arrest absent some evidence of actual impairment.
 {¶ 14} We have previously recited that a police officer does not have to observe poor driving performance in order to affect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. See, e.g., State v. Harrop (July 2, 2001), Muskingum App. No. CT2000-0026, 2001 WL 815538, citing Atwell v.State (1973), 35 Ohio App.2d 221, 301 N.E.2d 709.
 {¶ 15} An officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense. E.g. State v. Heston (1972),29 Ohio St.2d 152, 280 N.E.2d 376, cert. denied, 409 U.S. 1038,93 S.Ct. 534, 34 L.Ed.2d 486.
 {¶ 16} In the case at bar, the officer had probable cause to stop the appellant's vehicle for driving at a speed of 73 miles per hour in a 55 mile per hour zone. (T. at 6). The officer further had probable cause to arrest appellant because he did not have a valid driver license. (Id. at 6-7; 8). The record does not establish that the owner of the car which appellant was driving lived at the home adjacent to the driveway into which appellant stopped at the time. Accordingly, the officer could lawfully inventory and have the vehicle towed as a result of appellant's arrest for driving under a suspended license. Because the breath testing machine at the Canton Police Department was inoperable, appellant voluntarily submitted to a blood test in accordance with R.C. 4511.19. (Id. at 7). Although the results were not available to the officer that night, appellant had a blood alcohol level of 0.11%. (See, Canton-Stark County Crime Laboratory Report, filed May 25, 2005). It is axiomatic that the officer could have arrested appellant for driving with a suspended driver's license on the night in question and withheld charging appellant for OMVI until the results of the blood test were submitted. There would be no question concerning probable cause to arrest appellant for OMVI in that case. The appellant is apparently arguing that the officer did not have a right to request that he voluntarily submit to a blood alcohol test because the officer did not have probable cause to believe that appellant was driving under the influence of alcohol.
 {¶ 17} The legal standard for determining whether the police had probable cause to arrest an individual for OMVI is whether, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v.Homan (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952; Beck v.Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol." Lloyd,
supra, 126 Ohio App.3d at 104, 709 N.E.2d 913. In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See State v. Miller
(1997), 117 Ohio App.3d 750, 761, 691 N.E.2d 703; State v.Brandenburg (1987), 41 Ohio App.3d 109, 111, 534 N.E.2d 906.
 {¶ 18} Furthermore, when evaluating probable cause to arrest for OMVI, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered." Homan, supra,89 Ohio St.3d at 427, 732 N.E.2d 952. The case law is in agreement that probable cause to arrest may exist, even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. Oregon v. Szakovits (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, 291 N.E.2d 742; Fairfield v. Regner (1985),23 Ohio App.3d 79, 84, 23 OBR 144, 491 N.E.2d 333; State v. Bernard
(1985), 20 Ohio App.3d 375, 376, 20 OBR 338, 485 N.E.2d 783;Westlake v. Vilfroy (1983), 11 Ohio App.3d 26, 27, 11 OBR 39,462 N.E.2d 1241.
 {¶ 19} As stated above, upon approaching appellant, the trooper noticed a strong odor of alcohol, which became stronger when appellant was placed in the backseat of the officer's cruiser. (T. at 7;18). Appellant had very glassy eyes (T. at 7). An open container of beer was found near the driver's seat. (Id.). The officer was aware that appellant was under the age of twenty-one (21). (Id. at 8). Appellant admitted to having consumed alcohol and further told the officer that "he had been stopped before on prior occasions, never been caught . . ., drinking and driving, but that I had caught him this time." (T. at 7; 18).
 {¶ 20} Canton City Ordinance 333.01(B) provides, in part:
 {¶ 21} "(b) Operation After Under-Age Consumption. No person under twenty-one years of age shall operate any vehicle within this Municipality, if, at the time of the operation, any of the following apply:
 {¶ 22} "(1) The person has a concentration of at least two-hundredths of one per cent but less than eight-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood.
 {¶ 23} "(2) The person has a concentration of at least three-hundredths of one per cent but less than ninety-six-thousandths of one per cent by weight per unit volume of alcohol in the person's blood serum or plasma.
 {¶ 24} "(3) The person has a concentration of at least two-hundredths of one gram but less than eight-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath.
 {¶ 25} "(4) The person has a concentration of at least twenty-eight one-thousandths of one gram but less than eleven-hundredths of one gram by weight of alcohol per one hundred milliliters of the person's urine.
 {¶ 26} "(c) One Conviction Limitation. In any proceeding arising out of one incident, a person may be charged with a violation of subsection (a)(1)A. or (a)(2) and a violation of subsection (b)(1), (2) or (3) of this section, but the person may not be convicted of more than one violation of these subsections.
 {¶ 27} "(ORC 4511.99)."
 {¶ 28} In State v. Stidham (March 27, 1998), 3rd Dist. No. 8-97-34, the Court made the following observation concerning probable cause to arrest a person under the age of twenty-one (21) for driving under the influence: "[h]owever, because the prohibited amount of blood alcohol in an underage driver is so minimal, an arresting officer must look for more subtle evidence of drinking, and evidence of only very slight impairment of performance. Accordingly, we agree with the trial court's conclusion that an officer must look for less obvious indicators of alcohol consumption when assessing an underage drinking driver, but not because there is a `different' or `lesser' probable cause standard to satisfy. Rather, we believe that the indicators of two hundredths of a gram by weight of alcohol per two hundred ten liters of breath are more subtle than the indicators of one tenth of a gram by weight of alcohol per two hundred ten liters of breath. See R.C. 4511.19(A) (3); R.C. 4511. (B)(2). Thus, the facts which constitute probable cause to arrest an underage driver are different from the facts necessary to constitute probable cause to arrest an adult driver". See, also,State v. Gibson (March 17, 2000), 4th Dist. No. 99 CA 2516.
 {¶ 29} Appellant's arguments are simply attacks on the credibility of the arresting officer. His testimony and its credibility were for the trier of fact to weigh and determine. InSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 30} Upon our examination of the "totality" of facts and circumstances surrounding the stop and arrest, we conclude the record of the suppression hearing provided competent, credible evidence that appellant had admitted to consuming alcohol that night, that his eyes were glassy, and that he had an odor of alcoholic beverage about his person. Taken in conjunction with the lack of a valid driver license, the speeding violation and the age of appellant, we hold the circumstances as a whole created probable cause to believe that appellant was operating a motor vehicle while under the influence of alcohol, regardless of the failure to perform the NHTSA field sobriety procedures. Therefore, we find no error in the trial court's denial of appellant's motion to suppress.
 {¶ 31} Appellant's sole assignment of Error is overruled.
 {¶ 32} For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio is hereby affirmed.
Farmer, J., and Edwards, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court, Stark County, Ohio is hereby affirmed. Costs to appellant.